Good afternoon. Illinois Public Court First District Court is now in session. The 6th Division. The Honorable Justice Carl A. Walker presiding. Case number 24-1795. Kimberly Deppa as Special Administrator for Eloise Deppa, deceased, and Kimberly Deppa individually v. Abbott Laboratories, Inc. and Abbott Laboratories. Good afternoon, everyone. I am Justice Carl Walker. I'm the presiding judge of the 6th Division of the First District Appellate Court, and I have here with me Justice Sanjay T. Taylor and Justice Celia Gammarat. I'd like to ask the parties to introduce yourself, and for the appellants, if you can tell us how much time you'd like to save for rebuttal. Good afternoon. I'm Linda Koberly, representing Abbott Laboratories. If the total time is 20 minutes, I will be sharing time today with Joel Bertocchi, and I think, collectively, we would like to save 5 minutes for rebuttal. Okay, thank you. Ms. Koberly? Yes, Your Honor, I'm Joel Bertocchi. I represent the Johnson Appellants and Defendants, and I agree with them. Good afternoon, Your Honors. This is Ashley Keller for the Appellees. Thank you to Mr. Keller. All right, and Ms. Koberly, if you want to go, I think, I assume you're going to be starting us off. Yes, sir. Go right ahead. Great, thank you, Your Honor. May it please the Court, this consolidated appeal involves 29 cases, and my client is in all of them. Again, I'll be sharing time this afternoon with Mr. Bertocchi, who represents me, Johnson, which is a defendant alongside Abbott in the six cases. One second, Ms. Koberly. Mr. Keller, we would ask that you keep your screen on, that we should be able to see you during the oral arguments, as we would be if you were in the courtroom. Of course, Your Honor. Do you want me to stay unmuted also? Yes, you should stay unmuted, Mr. Bertocchi. You can be unmuted at this point as well. Ms. Koberly will be talking now. Okay, so go ahead, Ms. Koberly. Thank you, Your Honor. Once again, me, Johnson, is a defendant alongside Abbott in the six cases for which we sought intrastate transfer within Illinois. These cases all assert failure to warn and design defect claims based on specialized formula that was administered by NICU health care providers to an infant who later developed necrotizing enterocolitis. All of that happened somewhere else, in another state or in another Illinois county. That's where the claims arose. That's where the interest lies. That's where critical third-party witnesses can be found and subpoenaed to testify, and that's where these cases should be tried. The circuit court denied our forum nonconvenience motions in all these cases based solely on the plaintiff's choice of forum, defendants conducting business in Cook County, and for the six intrastate cases, the fact that me, Johnson's C-suite was in Cook County for a period of time. That analysis is wrong as a matter of law and an abuse of discretion. It can't survive this court's decisions in Lutzenkirk and in Montego and in Damien or the Illinois Supreme Court's many decisions on this subject, including Fennel, Gridley, Dottie, Jones, and others. The forum nonconvenience factors are designed to get at a single... You said that the critical witnesses are located in the states and counties in which the children were born and treated, and my question to you is how critical are they going to be to this case, which is a products case? It's not a medical malpractice case. I understand the babies were born often premature, underweight, were sick, and they were administered formula as nutritional aid, but how critical are these witnesses going to be? The briefs sort of talk about this in broad strokes, and just from my experience with products cases in the pharmaceutical industry, I'm not so sure that these treaters are going to be that critical. I'm happy to address that, Your Honor. This is not grocery store formula. This is formula that is sold to hospitals and administered by NICU professionals. So the third-party healthcare providers that we're talking about aren't just treating physicians who treated the injury from the product. They are the ones who chose the product. They administered the product. The plaintiffs allege that they were insufficiently warned. The plaintiffs allege that the healthcare providers were insufficiently warned as well as the parents. And these healthcare providers are often the only witnesses who really know everything that happened in the NICU. The parents may not have been there the whole time. Usually they weren't. The healthcare providers were. In both of last year's trials against Abbott that took place in the county of treatment, the parties had treaters testify, and at least one of them was live in each case. The circuit court found that this factor only slightly favored transfer because of the possibility of virtual depositions, but that's just not the same as live testimony. So what did these treaters testify to? I mean, I guess my question is, in this product's case, the question is going to be whether it's a defect or a sufficient warning. Presumably warnings are written down on the product. Maybe there's some other way to warn. But how relevant or how important was it to the ultimate issue in the case? Absolutely critical, Your Honor. And it's particularly so if you think about the failure to warn claims. So the causation analysis for the failure to warn claims is would a different warning have made a difference? The parents didn't choose these products. The healthcare providers did. So the healthcare provider and what the healthcare provider knew or didn't know why they made the decisions they made and didn't make, that that knowledge of the healthcare provider is the central issue for warning causation. And the best way to understand this, Your Honor, is actually if you think about the first summary judgment decision in Abbott's favor in federal court, relied specifically on testimony by the treaters because it was their knowledge that mattered the most for purposes of whether a different warning would have made a difference. The plaintiffs themselves have testified in most cases that they relied on the healthcare providers to make decisions about their infant's nutrition. They deferred to the doctors to make the decision. So it's not just that the treaters... Yes. Yes, Your Honor. We discussed at length the importance of the healthcare provider to the case and why the healthcare provider's knowledge is essential because the healthcare provider is the one who chose the product. And for a warning claim, that means the critical issue is why the product was chosen and whether a different warning would have made a difference. So that is absolutely in our briefing. I'm not sure our briefing addressed that first summary judgment decision. I'm not sure it was rendered when we filed our briefs, but there's no question. And we had treaters testify live in both of the trials against Abbott for precisely this reason. The treaters' knowledge is the most important fact for purposes of the failure to warn claims since they're the ones who chose the product. So, let me ask you. Go ahead. So, the summary judgment, obviously, with some papers, there was no live testimony. But when we look at the 6 intrastate plaintiffs, you will get that opportunity if they stay and cook because we have subpoena power. So, do you see the difference between intrastate and interstate? And if you do, how do you convince us that the trial court abused its discretion for those 6 cases? So, there will be, Mr. Bertocchi is going to address this as well, but you're correct that for the intrastate cases, we can have compulsory process. But we're still talking about third parties who practice somewhere else in the state and whose participation in trial will take them out of NICUs where they are treating fragile infants every day. So, when we're talking about which forum has the predominant connection to this litigation, it has to be the state where the product was chosen, administered, where the infant was allegedly injured, where the people, the relevant people made the decisions about the product. And none of that is in Cook County. So, let me ask you, because we have this whole listing of discovery documents in the record that talks about, for example, 1 plaintiff who lives outside of Cook County, but has 3 treaters in Cook County and other counties. We don't really know who the first treater was, do we? Because some of these plaintiffs have 7 treaters, 9 treaters. We've got legions of treaters in your discovery documents. How do we know who is the most relevant at this point? We can't know, Your Honor, and that's exactly why Gridley tells us that forum nonconvenience doesn't require doing all the discovery in the case before you make the motion. We have presented evidence for each of the infants, identifying at least some treaters. And we made a good faith effort based on the medical records at determining which ones were more important. Of course, we can't contact them directly under the Petrillo Doctrine. So, we did our best to identify key treaters and identify where they are today. And we presented that information about their current location in our briefs below. But one very important fact is not one of them is in Cook County. None of them are in Cook County. That's not what I see. So, when we went through the records, for example, there's a Winnebago plaintiff who has 3 out of 5 treaters in Cook County. That's what the record shows. We have 2 of those out-of-county plaintiffs who were, within weeks, transferred to Cook County hospitals and treated in Cook County. We have 1 out-of-state, I mean, excuse me, out-of-county plaintiff who is still getting treatment in Cook County. So, when you say nobody's in Cook County, that's not what the record shows. Let me just explain what I mean by that. The treaters who are critical to these cases are the ones who chose and administered the formula. None of those treaters are in Cook County. Now, you've pointed out a couple of cases where the infant was transferred after having developed neck and is continuing to receive treatment. Those treaters are more analogous to the kind of classic treater in any kind of product liability case who aren't necessarily central. My focus is on the treaters who are the essential witnesses for the failure-to-award claim. They're the ones who chose the product, and I'm not aware of any of those treaters in Cook County. Pivoting for just a moment to the public interest factors, none of this is in Cook County. The hospitals are not in Cook County, and the corporate conduct is not in Cook County. The plaintiffs have not identified a single action within Cook County that either defendant took in relation to these cases. Just a second. Just a second. I've been holding this question because I just want to broaden Justice Gamert's question just a little bit. Justice Gamert just talked more about those 6 that are local. Just looking at this as a whole, your client has the burden here. On this form, nonconvenience motion, explain to us how you believe that your client has demonstrated that this strongly favors transfer. That's where I struggle a little bit, too. If you can help with that, that would take us in another direction. The analysis is about whether another forum has the predominant connection to this case as compared with Cook County. In every single one of these cases, that is so. There is no relevant event took place here. The only connection that has been asserted or found by the circuit court is that the defendants do business here, but this court has told again and again, including in Roots and Kirkin, Monte Agudo, it was in Doughty and the Supreme Court and Gridley, that conducting even the same business in the forum does not affect the forum nonconvenience issue, to quote Monte Agudo. We've also identified in the interstate cases this problem of compulsory process that I was talking about a moment ago. We also identified a choice of law problem, the public interest that takes into account the burden of applying foreign law. The circuit court totally ignored that. The plaintiff's only response is to speculate that conflicts of law may not exist, but that's obviously not true. The federal NBL court in these cases has already found conflicts of law and confirmed that the law of the state of the infant's treatment applies on liability issues. In each of these respects, the resolve local disputes locally, the unfairness of requiring jurors to sit for cases that didn't arise in their communities, foreign law, compulsory process, all of that is part of our carrying our burden. In addition, in the interstate cases where we see transfer out of state, there's an error of law in that the circuit court found that Abbott's headquarters in a different Illinois county weighed in favor of keeping the cases in Cook. Abbott's headquarters in Lake County doesn't give a Cook County juror any greater interest in sitting for a trial in these cases. The analysis that the circuit court uses to determine whether or not a case is in the state of Illinois or in the state of Cook is a very, very important piece of evidence. The evidence that's used on that issue is wrong as a matter of law, and that would be enough by itself to require remand at least for the interstate cases. Let me ask you about that because I saw with interstate, you're looking county to county. Interstate, you're looking at the state as a whole and not necessarily the specific county. Are we wrong on that? The Wake House decision held otherwise. The Wake House decision that we've cited in our brief specifically held that the analysis has to be forum to forum. Now, it so happens in an interstate case that the forums are across state lines, but the analysis still has to be forum to forum. The Woodward case that the plaintiff's site actually makes this point, the court denied interstate forum nonconvenience, but it transferred the case to another county because the case had no connection to the county where it was filed. That's exactly the same as what we assert. The Supreme Court has described this in Vinson. It dismissed the case interstate forum nonconvenience. It dismissed the case for refiling in Missouri because the residents of the county where the case was filed shouldn't be burdened with jury duty given that none of the events surrounding the controversy took place in their county. Didn't Fennell really hone in on the appropriate state and not the county? It did, but the distinction didn't matter in Fennell or in any of the other cases the plaintiff cited. What Fennell focused on was state to state because it assumes that when the plaintiffs filed the lawsuit in Illinois, they would file the case in a county that had some connection to the dispute. In all the cases that the plaintiffs are talking about where the term Illinois and the forum are used interchangeably, the distinction didn't matter. They haven't cited any case that relies on a connection to a different Illinois county to deny a motion for forum nonconvenience. It makes sense if you think about the jury point that I just mentioned. So, there is evidence that for at least three of these plaintiffs who are interstate, Abbott made a motion to do a snap removal to get them into the MDL litigation in the northern district. Presumably, Abbott thought it was convenient enough for these three plaintiffs to be in Cook County. And now Abbott is saying Cook County shouldn't be the right place. I understand the difference between federal and state courts, but in terms of convenience, which we're looking at, the Dirksen building is three blocks away. How do you respond to that? The purpose of the MDL is to coordinate pretrial proceedings. And under federal law, the default is that when those cases are tried, they will be returned to the transferor court. So, a case that was, for example, filed in Tennessee would be returned for trial to the relevant federal district in Tennessee where the jurors would be drawn from the communities where the events arose. So, it's a pretrial proceeding. Now, it's true that the parties in an MDL sometimes consent to have a trial conducted centrally as part of a bellwether process, which is really an effort to narrow the whole portfolio and promote settlement. So, you sometimes agree to try a representative case. That's not what we're talking about here. What the plaintiffs want to do is try every single one of these cases in Cook County by Cook County jurors who do not have an interest in the underlying events. And also, even for the bellwether cases that would have been tried in the Northern District had we not won on summary judgment, the jurors for those cases will be drawn from the Northern District, which includes Lake County, where Abbott has its headquarters. For these cases, the jurors would be drawn entirely from Cook County, and they have no interest in resolving these underlying disputes that arose elsewhere in the United States. I should pass the microphone to Mr. Bertocchi before I use all of his time. So, if it's all right with your honors, I'm happy to answer more questions, but I'll pass to Mr. Bertocchi. I think Justice Taylor had a question that did not get answered. Well, my question was Abbott's vice president of global nutrition research and development lives in Cook County. I mean, that seems like a pretty senior executive at Abbott who would presumably have knowledge about the research and development that went into the design and formulation of the product. So, the fact that there's one witness in Cook County is, of course, not dispositive. The court wrote as much in Lutzenkirchen. The question is, where is the center of gravity from purposes of fairness for trying this case? It's not just one witness. It's presumably one of Abbott's most senior witnesses. And if need be for him to testify in person, we'll bring him to court. And that's why the courts in Gridley and Finnell talked about, when you're talking about a party witness, the plaintiff is not going to have trouble securing the attendance of that witness if they really want them, if they're a current employee of the company. Whereas the plaintiffs still have not identified, I mean, when you balance that with the fact, with all the evidence and all the witnesses and all the interest that sits in these other jurisdictions and the fact that we won't be able to subpoena the essential witnesses who chose and administered this product. If the case is in Cook County, having one witness who lives here is just not enough. And I would submit the court acknowledged as much in Lutzenkirchen where it acknowledged that some of the defendants live here. I have another question very quickly. If we agree with you and we reverse and the plaintiffs are forced to refile in their respective states, presumably Abbott can remove to federal court, correct? Yes. And then presumably Abbott can work to consolidate this with the multi-district litigation pending in Chicago or any party can? For pre-trial purposes, yes. Okay. Now you say that the practice under the multi-district litigation rules are that the cases by default are transferred back to their respective districts in which they originated for purposes of trial. Is that the rule that you're representing to us? Yes. It's actually a U.S. Supreme Court case called Lexicon and that is the law in MDLs that the case, the default is that the case will be transferred back for trial by jurors drawn from the community where the events arose. Okay. Thank you. Ms. Corbett, speaking of those six cases, what aspect of this case cannot efficiently be tried in Cook aside from your argument that the residents of Cook have no interest? It would be extremely difficult for us to try failure-to-warn claims without being able to compel the testimony of the most important witnesses who are the ones who chose the product. The plaintiffs allege that the treaters were not- But those witnesses, those witnesses are here in Illinois. No, no. Oh, you mean for the six? Yes. Only the six I'm talking about. I apologize. That's fine. So for those witnesses, and then if it's all right with the court, I'm going to pass to Mr. Bertocchi who can address this from Meade's perspective. But even for those cases, there is absolutely no interest here and our burden is not- that Cook County is inconvenient. I submit we've done that even for the six cases, but we're actually not required under the law to make an affirmative showing that Cook County is convenient. What we've done is show that the other counties are very convenient and that when you take into account the public interest factors, there is no interest for a Cook County juror to have to sit for these 29 trials. And I'll just refer the court to Gundlach versus Lins. Stay on point, Ms. Koeberle, because remember, we're only talking about the six right now. I realize that you want to leave the hedge, but go ahead. No, I'm talking about the six. Yeah, okay. Nothing happened here. Not one thing. Not one thing. Not one event happened here, and all the third-party witnesses remain in the different forums. They are physicians, and in order to bring them live to testify at trial, we would have to take them away from their active practices and their patients. It's inconvenient for them. It's inconvenient for us. It will impair our ability to have treaters testify live, and we should have that ability, if we choose, to call the most important witnesses to testify live. Thank you, Ms. Koeberle. And Mr. Bertocchi? Thank you, Your Honors. May it please the court, Joe Bertocchi for the Johnson defendants. And I will be talking mostly about the six, because those are the cases that Neat-Johnson is in. And I'd like to begin by addressing some of the points that were raised by the judges in their questions. We agree with Adam. The treaters, when we use that term, are talking about the doctors who treated the infants for their premature birth and the challenges they faced as a result of that. And all of that treatment, which included the decision to administer formula, the evaluation of the risk of formula, all of that took place in other counties. I would point out, in response to Justice Walker's question, compulsory process is not convenience. Yes, all these doctors can be dragged from their practices at hospitals where they are treating infants. They can be dragged to the family center from Winnebago, from Peoria County, from Kane County, Lake County, DuPage County. Is it convenient for them? No. And they are third-party witnesses, as Ms. Koeberle pointed out. But it also provides... Mr. Bertocchi, where in the record do we know how long these infants were treated with this formula? Was it a one-time deal, the minute they were born, then this disease supposedly got discovered? Well, it's hard because, as I review the record, I see a whole slew of treaters, and I can't tell the timeframe as to these treaters. So, again, I understand, for example, one plaintiff was born in Kane County but quickly transferred to Cook. It seems to me that Cook would have been dealing with some of this formula, some of this decision-making, and be a relative treater. Or is this just a one-time, where you're born, you get it, and then nobody else matters? Your Honor, I think the defining event is when the necrotizing enterocolitis is diagnosed. Because that is the grommet of the plaintiff's claim. There is it in the record where we would know that. You probably don't even know it. Your Honor, it's the nature of their claims. The two infants you're talking about, in the Akala case and the Bahena case, were transferred to be treated for NEC, which means by the time they were moved, they already had the disease that the plaintiffs claim our formula caused. I can't tell you from the record whether some of them got formula for a day, a week, a couple of weeks. But what I do know, and what the record does disclose, is those transfers to Cook County hospitals took place because the infants had become sick. And that means that the risk that the wrongful acts that the plaintiffs' claims focus on had already happened. Yes, they were treated for NEC, those two infants, in Cook County. But that's not the grommet of the plaintiff's claim. The grommet is how did they get it, and the plaintiffs say they got it through formula. And the formula was given to them, and according to the plaintiffs, caused the illness. That necessarily happened in the counties where they were born and treated for prematurity. I will also add, Your Honor, in response to a previous question, that there is one trial that Lee Johnson has been involved in, which is the Watson trial. It's tried in St. Clair County. And there also, these treaters, the prematurity treaters, the treaters who decided this infant needs formula, also testified. Now, they didn't testify live because they were from St. Louis, and we didn't have a compulsory process. But again, compulsory process, the fact that these out-of-county doctors can be brought to the family center, does not address the public interest factor of convenience for those third-party witnesses. I think what I'd like to emphasize is the way Judge O'Brien, in all of his rulings, really strained to keep these cases in Cook County. The overall big picture is as Ms. Comer has described it. These are cases where the events centered elsewhere. They centered in the counties where the infants were born and treated for prematurity. Yes, it's a product's liability case, but there's nothing about Cook County that has anything to do with the product phase or how these formulas were developed. Who decided to put cow's milk formula into formula, which is what the plaintiff says was wrong and created the risk. None of that happened in Cook County either. And so none of that points to Cook County as an appropriate forum. I want to talk about two of the private factors, the convenience of the parties and the access to evidence. The plaintiff, it is assumed, is willing to go where filed. And that's what the plaintiffs here rely on. But the courts have looked at that issue a little more skeptically, particularly in Lutzenkirchen. In Lutzenkirchen, the court looked at an affidavit from a plaintiff, and I think Winnebago County, I'm not sure I remember, who said, I'm fine with coming to the daily center. And the court described that as questionable. Of course, there are no affidavits from any plaintiff in this case saying, we're perfectly fine with coming to daily center. And so while you may assume it, it's not necessarily something that has to be accepted at face value. Access to evidence, testimonial, and documentary is a central consideration. And for both of these factors, Judge O'Brien made the same error. He attributed weight to minor, insubstantial, or nonexistent connections to Cook County or to misapplied law with what we do in cases like this, which I admit they are, where the witnesses are scattered. In terms of access to witnesses, Judge O'Brien mentioned, he acknowledged that the medical witnesses were mostly, or all for some cases, in other counties, but then he never mentioned it again. He didn't seem to give it any weight. Instead, he focused on the location of other witnesses who are also not in Cook. Our witnesses, the Lee Johnson witnesses who know what's in formula and why, and who put it there and manufactured there, are in Indiana. Abbott's folks are in Ohio. And the second. So, let me interrupt you because you're coming to Illinois, regardless, right? You haven't challenged venue. You know, meat is coming to Illinois. You just want to spread all over the state. So, when we look at convenience to all parties, how can you tell us that it's more convenient for you and your client to be in any other county versus Cook County where these proceedings have been centralized, where they've been consolidated for discovery purposes and where there is good transportation, international airports and so forth. Your Honor, we, as defendants, are entitled to invoke all of these factors, regardless of whether they're coming. We're coming into Illinois either way. There is no case that says that a defendant doesn't get to argue when they're from. You could argue it. I just want to know. Realistically, your people are not in Illinois, according to you. So, if that's the case, why is it more convenient for your people and your client to go to Peoria County or Winnebago versus Cook? Well, Your Honor, for one thing, most of our people who are involved in nutrition and were involved in why the formula has these ingredients are in Evansville, Indiana, which is probably closer to Peoria. And probably easier to get to. It's probably easier to get to some of these counties than it is to get to Davis County. I know, you know, everybody goes by that. But probably it's not an extra-burdened group on appeal. So, we're also entitled to invoke the public interest factors, and we are entitled to say we want these cases tried in front, as Ms. Coleman said, of jurors with an interest in places that have an interest. It is true. Our client, our employees will go wherever they are sent. So, Mr. Bertocchi, does it make a difference that this is a product that your client sells and that Abbott sells that's used nationwide throughout NICUs around the country? So, if that's the case, and I think you'd probably agree, that why wouldn't Cook County jurors have an interest in that issue? Your Honor, that's the doing business rationale that's been rejected by the Supreme Court. Yes, I'm not aware of where we sell literally in every county in America, but we certainly sell this product nationally. But that doesn't provide for national convenience, and that doesn't provide for national juror interest. These cases are not- You're saying that that confuses the issue of personal jurisdiction? It does. And in what case is it? I think it's in your brief, but remind me which case it is. Which case it says which, Your Honor? You cited a case saying that that's a matter of doing business as opposed to a consideration under the Doctrine of Foreign Nonconvenience. You mentioned it just a second ago. I did, and I think that's right. Unfortunately, Your Honor, I'll stop right here. Okay. Ms. Hubbard, Ms. Hubbard mentioned that case. Could you tell us the case? I think the same discussion is in both Finnell and Gridley. Thank you. First, we assume that- Yes, that's fine. Thank you always, Ms. Connolly, for coming to my aid. Yes, you don't have national convenience with a national product. The convenience is about the trial. Trials are about witnesses and who will be called. So let me ask you about that, Mr. Bertocchi. Is your client involved in the MDL? Yes. Okay. So you mentioned that convenience is about trial, and so I take it by that you're saying it has nothing to do with pretrial. Well, before a nonconvenience case is said, it's about where the case can be most efficiently and properly tried. There is a rule in Illinois, which you all know, Rule 384, that is sort of like an MDL rule, the MDL rule, which is you can consolidate cases for pretrial purposes and then send them back to where they were filed, where they were properly placed for trial. We have tried to invoke 384 a couple of times, and the plaintiffs have fought us bitterly, and the Supreme Court has said both times, denied without prejudice. They have not closed the door on that. But that's different. But, yes, before nonconvenience cases talk about where the case should be tried, there is a way to deal with this in a consolidated way for pretrial purposes properly under that rule. We're certainly willing to explore it. We've tried to explore it. So you have it right now. I mean, the cases are consolidated for pretrial and discovery in Cook County. You have that going right now. These cases are, but there are hundreds of cases and thousands of claims in Madison and St. Clair County. So we're still all over the place. So for these cases, let's say we were to reverse. Does that dissolve those orders then? In other words, will you be fighting discovery on all fronts in 29 different places? I think so. Well, I think so, Your Honor, because Rule 384 has not been invoked. But what Judge O'Brien's order would do is keep these cases in Cook County for pretrial and trial. He did not enter an order that says let's do all the pretrial here and then send them away later. No one has proposed that. And so we are dealing with these orders as they are, which would keep these cases in Cook County, a place where they should not be tried. They can be coordinated in any number of places for pretrial purposes. The trial is the focus of 419 meetings. Let me ask you about the Benedict case. That seems really similar to the case at hand. How do you distinguish Benedict? Your Honor, I apologize. I'm not sure I can do that. I don't have it in mind at the moment. I'd like to move on to a couple of other issues with Judge O'Brien's ruling. One is he made a point in all of the six intrastate cases to talk about the fact that witnesses were scattered. And he cited the Green case. And in his view, scattered witnesses no one takes in favor of denying 419 meetings. But you have to look to Dottie to see what Green really meant. Because Dottie talks about Green. And Dottie says, yeah, that's true. Scattered witnesses militate in favor of denial of a 419 convenience motion unless there aren't any witnesses scattered in the place it's chosen for them. And that was the difference between Green and Dottie. In Green, there were witnesses in the forum that was plaintiff-fine. But in Dottie, there were not. There were no witnesses in Madison County. So scattered witnesses doesn't always mean the plaintiff gets their forum unless some of them happen to be scattered in Cook County and there aren't any here. So, again, I just have to go back because the record shows dozens of what you're all calling treaters. Dozens. So we need to take what you're saying as true to say, judge, there's only one treater that's important. And that's that treater who gave the first bit of formula. Nobody else matters. It's just that hospital, that treater in that county. Well, Your Honor, first let me say in answer to that question, of the six cases, there are only two that have any treaters in Cook. And the others, they're all back where the infant was born. I show very different things based on the discovery. I show, you know, treaters that do business at least in Cook County in every single case. You know, how will we know when to Cook County? Strzok has three treaters in Cook County. Thomas has one in Cook County. Ward has others in Cook County. And it's getting rehab in Cook County. Bakina has went to Cook County. And Ward will live in Cook County. And it has nine treaters. Your Honor, I think you've got to look at the plaintiff's claims in order to distinguish a treater of one kind from a treater of another. Now, I can't tell you whether it was only one doctor or two doctors in the NICU who were involved in the decision to provide formula. Who evaluated the risk and said this infant needs formula for a myriad of reasons. Who analyzed the risk of NAC when they made that decision. But all of those treaters were in the counties where the infants were born. Yes, I'm sure a number of these children are still being treated for complications from NAC. But there's treaters and there's treaters. And I guess I would say they're not all created equal. And how you make that distinction is to look at what the plaintiffs claim. The plaintiffs don't say that the plaintiffs say that what we did wrong was put cow's milk in formula which when administered to premature infants causes NAC. That administration is the crux of their claim. And that all happened in the other counties. I'm sure these kids have treaters elsewhere for the complications of NAC. But by the time they develop NAC, according to the plaintiffs' claims, the wrongful acts were all over with. Because that's how NAC is made. There are, of these six cases, there are five different counties involved. Is that correct? Yes, Your Honor. Two of them are in Winnebago. Right. And you believe that you would concede that jurisdiction would be proper in each of those five counties. Is that correct? Yes, Your Honor. We would not contest it. Indeed, in the one case I mentioned that was tried in St. Clair County, it involved an infant who became sick in St. Clair County. And we said, yep, that case belongs in St. Clair County. We did not contest jurisdiction venue or form NAC convenience there. And we tried that case there. And we would try that case, these cases, in any of those, these six cases, in any of those five counties. Let me ask you that because you said, I thought that you said that there was an out-of-state treater. Was I wrong on that? You said they didn't testify live because there was no compulsory process. But that was because that infant was born in St. Louis, but before the infant became ill, was moved to St. Clair County, right across the river. So there were treaters from, who were prematurely treaters, who were in St. Louis who could not be brought in live. How are we supposed to know at this stage whether that exact same thing didn't happen, particularly with Atala or, I think, Hena? How do we know? Because we know from the record that they were moved because they had neck. They were moved to be treated for neck. So by that time, not to be flip about it because it's obviously a very serious condition, but the horse was out of the barn as far as the plaintiff's claims go. The wrongful act had already occurred as far as the plaintiff's claims go. And form NAC convenience looks to the claim that's going to be tried. Again, I don't doubt that these infants have people who are treating them for the complications of neck in various places, wherever they live. And some of them may be in Cook, but they are not the ones who are involved in what the plaintiffs say we did wrong. So to accept this, I think we have to make the assumption that these children stopped receiving formula before they were ever transferred to Cook County or before they ever saw these other exceptionalized treaters. Is that what you're telling us? I'm not sure that they stopped receiving formula when they got to Cook County. But what I know is they went to Cook County because they acquired the condition that the plaintiffs say formula caused. Did they continue to receive it? I don't know. But again, the risk the plaintiffs say comes with this formula had materialized already or they wouldn't have been moved. Sure, but you could hardly say if they were continuing to get this formula, you could hardly say that there's no connection to Cook. No, but I would assume, Your Honor, and I think it's a fair assumption, that the risk materializes initially when formula is first administered. Whether it continues to, if there is a risk, does it continue when formula is continued to administer? Maybe, but the decision is the focus of these cases. The decision to give formula for whatever reason, the evaluation of the risk, the evaluation of warnings, what the treating physicians knew about the risk of MAC and why they decided to do it anyway. And those decisions were all made in the counties where the infants were born, in the NICUs of the hospitals where those infants were treated for premature. Your Honor, I'd like to move quickly through a couple of more aspects of Judge O'Brien's rulings. His reliance on airports for out-of-state witnesses makes no sense, simply because O'Hare is not exclusively Cook County's airport. Quite frankly, anybody from New Johnson who comes here from New Jersey or the United Kingdom, whether they're going to one of these five counties or Cook County, they're going to go to O'Hare. The airport doesn't make any complex case tribal in Cook County. The view of premises, not an important factor, I agree. Very unlikely to happen in this case. Frankly, I can't imagine the jurors proving through a NICU, an active one particularly. But I think the way Judge O'Brien addressed that factor shows how hard he was pushing to keep these cases in Cook County, because what he talked about was needs corporate headquarters. The C-suite, which has been gone for seven years, so it's not going to be visited. But he said that could equally be considered the scene of the occurrence. And it just can't. Nothing happened in the C-suite that is relevant to what goes into formula. What is analyzed by the scientists at New Johnson who said, let's put cow's milk in, which they decided decades ago. Those folks have always been in Indiana. So you can't consider the C-suite. Mr. Pataki, you're actually way out of time right now. I'm sorry. To continue, because this is Gambit who is still asking questions. OK. I apologize. We have questions now. So we're going to stop there. And let's hear from Mr. Keller. Thank you, Your Honors. And may it please the court. Ashley Keller, again, on behalf of the Appalese. Justice Taylor, I want to start with something that you were asking my friends on the other side about. And I actually think, Justice Gamreath, that the Benedict case is on all fours here. Your precedent says that in a products liability action, the place where treatment occurred, it's not totally irrelevant. But it's not the most important factor. We haven't sued any doctors here. We haven't sued any hospitals here. These are products liability claims that essentially boil down to failure to warn. And that's a duty to warn the end consumer, the moms in the NICU. And design defect, the decision to put cow's milk product out there knowing that it is dangerous for this particular population. And so where those are the relevant claims, that is the misconduct at issue. Of course, where these infants were born is not the most important thing compared to a malpractice action where the doctors are being sued for misconduct. And I actually think that the one trial that's actually occurred in Illinois, in St. Clair, proves this point. This is the Watson trial. It was a high stakes case. It resulted in what, with post-judgment interest, is now a $70 million verdict. So you know that Meade Johnson took it very seriously. They didn't call a single treat or lie. Now, you just heard from my friend on the other side. That's because there was no compulsory process because the infant was born in St. Louis and then transferred across the river to St. Clair. That's true. But Justice Gamorath, this proves your point. You need to have a record here, and they need to meet their burden. In that case, which has already gone through trial, so of course we have a complete record. We know that the Watson child developed NEC not in St. Louis, where the child was born, but in St. Clair, where the child was transferred. So if the real thing that's supposedly the most important for trial for these defendants is to call those treaters who made the NEC diagnosis, you know from the actual example you have from Illinois, they did not call a live treater who made the NEC diagnosis. So if you don't have sufficient evidence in the record, given the standard of review, which I didn't hear focused on a lot by my friends on the other side, clear abuse of discretion where no reasonable jurist could look at these facts and come up with the same answer, you have to say that they haven't met their burden. Now, I do agree with Ms. Coberly. They don't have to conduct extensive discovery in order to file a form non-motion. But if they choose not to do so, they have to go with the record that they have. We didn't boil the ocean with extensive discovery to point out in our briefs that the treaters oftentimes are in Cook County. We went on LinkedIn. We did Google searches to see where these treaters are residents, and they have practicing privileges. They could have done the same thing on their end. They chose not to do so. And as a result of that choice, you have to take the record and the discretionary standard of review as you find it. Justice Gamrath, I also want to return to a point that you asked my friends on the other side. You are 100% right. In interstate forum nonconvenience motions, you're comparing state to state. That's your precedent in the Goodyear case. And I think if you step back and think about it, that precedent makes total sense. What we're talking about here is taking a case entirely out of the Illinois judiciary. When a forum nonmotion is granted interstate, you're not transferring it. You're actually telling the plaintiff you're dismissed, and then you get to go refile in some other place, if you so choose, with some strings attached like statute of limitations requirements that the defendants are required to agree to or the dismissal won't be granted. And if we want to talk about forum shopping, I think you touched on this as well, Justice Gamrath. It's pretty clear what's going on here. Abbott wants these cases to be dismissed from the Illinois judiciary. They don't care which county it's in, so that they can be filed in some forum state. They will remove in a New York minute into federal court, and immediately those cases will be tagged, transferred by the Judicial Panel on Multidistrict Litigation, and sent where? Right to the Northern District of Illinois in Cook County. So they want to get into federal court. I don't blame them. I'm not someone who thinks that. What's your response to Ms. Koberly's position that the MDL is for pretrial discovery only, that the default rule is that the case is then transferred back to the originating district for trial? What's your response to that? Yeah, so there have been three cases that have been worked up in the federal MDL for trial, and the district court in federal court has granted summary judgment on specific causation issues, so they haven't actually gone. But one of them was two weeks away from being tried in the Northern District of Illinois. It is true enough that MDL consolidation under the lexicon case that she mentioned is for pretrial purposes only, but it's for everything right up until the cusp of trial. And as is often the case in these federal MDLs, the MDL judge wants her cases to be tried first. And so long before these plaintiffs will ever get remanded back to North Carolina, for example, there are going to be Chicago-based trials. So they're essentially put in a holding pattern for years longer than they would otherwise have to wait, which is why they want to be in state court in Cook County where they actually filed. What's your response to Mr. Bertocchi's point that the foreign nonconvenience doctrine focuses on the location of trial as opposed to location of pretrial matters? I don't think that the focus is only on trial. There's a reason that these motions are typically brought very early in proceedings in order to send them to the county or the state that's supposedly more convenient. There's a lot that goes into working up these sorts of cases. There's a lot of depositions, a lot of discovery that's going to transpire. Of course, there are going to be summary judgment motions. And so I don't think just focusing on the couple of weeks of trial is the only thing that matters. Of course, trial is really important as well in the calculus. That's why jury considerations, for instance, are part of the forum non-analysis. But I think it's a little bit too myopic to focus only on the trial phase and to ignore everything that goes into the run-up of trial. But again, returning to the Benedict case, I think that that is on all fours. It obviously talks about the discretionary standard. And I do want to note as well, because I think both of my friends on the other side were suggesting that the circuit court here was just a rubber stamp for the plaintiffs trying to keep cases in Cook County. That's not true. There's a case that's, of course, not in front of you on appeal because they won and we lost where the circuit court said, you know what, they've met their heavy burden. I am going to dismiss this case on interstate forum non-grounds and say that it has to be filed in Ohio. That's the stupor case. So this is a circuit court judge who's actually doing his job and carefully going through and weighting each one of the public and private interest factors to come up with the right answer. Yeah, so there is a specific factual connection to these claims as to both defendants. Let's start with Meade Johnson. So again, these are products liability actions, essentially failure to warn and design defect. Where is the decision made about what warnings to put on the product or to not put on the product? Ultimately, the buck stops at the C-suite. Ultimately, the buck stops with the people who run the company. For the relevant years in question, for the overwhelming majority of plaintiffs who are in front of you, Meade Johnson was headquartered right in Cook County, so they made their decisions there. And there's evidence in the record here that AVID employees also worked in Cook County and lived in Cook County who were crucial in making those sorts of decisions. I understand why they want to focus on the treaters and the hospitals at issue here, but we're the plaintiffs. We're the masters of our suits. We're the ones who get to choose the causes of action that we want to bring, and we've brought products liability actions that are focused on their corporate decisions to not supply adequate warnings to moms in the NICU and to design a dangerous product. So you're arguing that simply having – if this occurs in Ohio, Indiana, Texas, wherever, just simply having an office in Illinois is enough? Is that what you're telling us right now? No, Your Honor. I'm not suggesting that simply having an office in Illinois is enough. I want to make sure I'm specifically responding to your question. When you say that this happens in Texas, for instance, I assume you mean that this is a neck diagnosis, a baby's born prematurely in Texas. Of course. Of course that's what I mean. Yeah. Well, the reason I clarified that is because the misconduct that we're focusing on that we think led to that neck diagnosis is the decision in Illinois, specifically decisions made in Cook County to design that product in a particular way, to put inadequate warnings on that product. And for me, Johnson, it's even clearer that happened in Cook County. I'm sorry. Did one of you have a question? No. That's not what the defendants say. The defendants go through their list of employees and say the key ones are in Ohio for Abbott. And Johnson says nothing's happening in Cook County. We have some miscellaneous salespeople. That's it. A couple of responses to that, Your Honor. There are two different questions that would be relevant to forum non. The first is whether there's an interest in Cook County to having these cases tried there. And I think if the relevant decisions at the time that these products left the manufacturing facility were made by key employees in Cook County, that supplies a sufficient interest in that county, even if the employees have moved on. Even if me, Johnson has now moved its headquarters and a lot of them are cited in the U.K. That's a relevant window of time. That wasn't true. So it supplies a connection to Cook County. It is separately relevant, as Your Honor is certainly getting at, that now the employees are scattered all over the place. And the circuit court appropriately took that into account and essentially said that the factor did not favor transfer because the employees are all over the place. And your precedent reaffirms that in cases like Benedict. If the employees are in lots of different spots and Cook County is at least as convenient to them as any other place that the defendant is proposing to transfer the matter to, then that factor does not strongly favor granting the defendant's forum nonconvenience motion. So I think both aspects of that are relevant to what Your Honor was asking about. I know that you've talked about the failure to warn parents. But there are applications in your complaint that talks about how the medical providers were not warned about the risks. And how the defendants had a duty to warn the doctors and the hospitals about these risks. And in turn, there should have been better warnings to the parents. But your own complaint does talk about the warnings to the hospitals and the medical providers. So that seems like those treaters will be relevant. I agree with Your Honor. And we are not disputing that the treaters are relevant, just like the Benedict versus Abbott case says. It's not entirely irrelevant. So we're not suggesting that those witnesses should be crossed off or ignored. And the circuit court did not ignore them. And it wasn't an abuse of discretion to treat them as he did. But I would say they're not the main event. They're not the most important witnesses. They're not the ones that we're calling the most prominently in our case in chief. They're not the ones that we necessarily need to see testifying live. And, again, in the one trial that's actually happened through verdict where you have a complete record here in Illinois, the defendants didn't choose to call the relevant treaters live. And, again, it wasn't just the treater who was birthing the child or dealing with the child immediately after birth. The treater who made the neck diagnosis was in Illinois, was in St. Clair County, and they chose not to call that treater live. So I think that's a pretty powerful indication that even from their perspective, these are not the most crucial witnesses. But I'm not disputing Your Honor's point. The treaters are relevant. And the circuit court needed to and did take their potential testimony into account. It's just that there are all of these other witnesses who, from our perspective as the masters of our complaints, are more important for the analysis. So I'm going to ask you the same question that I asked defendants, and that is, you know, about this laundry list of treaters. Dozens in the record. Mr. Pataki said, well, it's that initial treater, it's the initial hospital, because that's where they were diagnosed. How do we know that's true? How do we know that once a child has transferred to Cook, the formula stopped? It's a great question, Your Honor. You don't know that's true. He doesn't know that that's true. The St. Clair case that I just referenced to you proves that it is often not true. The initial treater is not the one who makes the next diagnosis. And, again, it's their burden of proof. The plaintiff's choice of forum starts in the lead. Then they have to meet the heavy burden of establishing that that lead should be eviscerated and you should transfer the case somewhere else. If they don't meet their burden, you have to affirm the circuit court. And they can't meet their burden. They are just asking you essentially to make an assumption. Wherever the child was born, that must be where the most relevant treaters are. But they still want you to assume that the treaters live in the same place. We don't know if they've moved and they haven't met their burden to establish that they haven't. There are treaters, as we note in our papers, who are from all over the place, including in Cook County. And they want you to make the assumption that the next diagnosis occurred at the hospital where the child was born. And we know in at least one case where you have a complete record that that's not accurate. So they're not, I think, capable on this record of meeting their burden to show that the trial court abused its discretion in such a way that no reasonable judge could have made the same determination on forum nonconvenience. They've utterly failed in their burden of proof. So let's switch to the interstate plaintiffs. We have at least eight or nine plaintiffs who never touched Illinois or Cook County. They were born somewhere else. They live somewhere else. All of their treaters are still in that same state. Tell me how Illinois or Cook County would be the most convenient forum for those particular plaintiffs. Yeah, so I think with respect to the treater witnesses, it wouldn't be. And I think the circuit court appropriately found that for that particular factor, it would cut in favor of transfer. But again, these are products liability actions. I'd point you again to your precedent in Benedict. There are connections to misconduct that happened right there in Illinois, right in Cook County. The decision about how to design the label of the product, what warnings to put out, how to put particular ingredients in the product that we say dramatically increase the risk of neck. Those decisions were often made in Illinois. One of the companies is cited in Illinois. It is headquartered there. It has a massive campus right next door to Cook County in Lake. And again, an interstate forum nonconvenience. Your honor is exactly correct from the Goodyear case. You're looking state to state, not county to county. So you just look at Illinois as a state writ large. And me, Johnson, again, was headquartered in Illinois during the relevant window of time. So, of course, there's some connection. We wouldn't dispute the point that for the particular treaters, it wouldn't be the most convenient forum. But that's just one consideration amongst many. You have to wait all of the different forum nonfactors as the circuit court appropriately did here. And I don't think the circuit court came anywhere near abusing his discretion. You raised the case of Stupert. What was the critical fact that made Stupert go back to Ohio? I think it wasn't a single critical fact. I think the circuit court, again, took its responsibility under this court's and the Supreme Court's precedence seriously not to give undue weight to any particular factor. But because that case was from Ohio and Abbott has demonstrated that at least some relevant witnesses associated with the design and warning of the products are based there, that created a stronger connection that I think probably tilted the balance for the circuit court in sending that case to Ohio. I'll confess to your honor, I haven't looked at the record as carefully in that case because it's not in front of you on appeal. And I had enough to do trying to hear through the record of these 29 cases. But I point that out to the court to show this is not a judge who's just a rubber stamp for plaintiffs or a rubber stamp for Cook County saying everything that is filed with respect to necrotizing and her colitis is going to stay here in appropriate cases where the defendants meet their heavy burden. He's willing to send the case to the place where the defendants request. Mr. Keller, how do you, I'm sure you're aware, but let's encourage. Let's encourage him, because the council recently filed a motion to set additional authority on that. How do you reconcile that case where this panel of this court recently actually went the other way? Yeah, I don't take issue with that precedent at all. Your honors, I would embrace that precedent. There are a lot of important distinctions. First, I will say with great respect and deference to the circuit court there, it was sort of a strange opinion. The circuit court found that most of the forum nonfactors favored transfer, but then just said at the end, based on the totality of the circumstances, I want to keep the case. This court gave due deference to those findings and actually said in multiple places, we agree with what the circuit court found. It's just we don't understand how the calculus came out the way it did. That was obviously a malpractice case. So the treaters were sued, which is an important distinction, as we've been talking about from Benedict. There were affidavits submitted demonstrating that the initial forum was not convenient and the proposed transferee forum was more convenient. You don't have any record evidence like that here. So I think there are a lot of distinctions that would have allowed this court to reach the results you did there that are simply absent here because the defendants utterly failed in their burden of proof. I'm happy to yield back time to the court if you don't have further questions for me. Thank you, your honors. Coberly, we'll come back to you. You have to start with Benedict, your honors. That case is different in really three very important ways from this case. First of all, it was a product liability case about a drug, not a hospital administered product. So that was a product that was prescribed and taken by the plaintiff wherever she was. It was not a product that was selected and administered by a hospital employee or medical professional in a NICU. So the treaters and the location of the treaters matters far more in our case than it did in Benedict for that reason. Secondly, it was a scattered witness situation. That was a consolidated case with plaintiffs who received, who took the drug in different states. So the court acknowledged that the compulsory process concerns would remain even if the case was sent to the location where each plaintiff, where any one plaintiff lived. And finally, there was record evidence in that case that there were multiple avid witnesses with relevant knowledge in Cook County and we don't have that here. So on all three of those bases, I would say that Benedict is quite different. Also, I wanted to just respond to one thing that my friend on the other side said. The plaintiffs, there was a lot of discussion about maybe it might have happened that people moved around. Plaintiffs have never disputed that in every single one of the interstate cases, all 29, all the irrelevant events took place outside Illinois. The warnings were over given at a NICU outside Illinois. Formula was administered at a NICU outside Illinois. And formula allegedly caused neck outside Illinois in the state where the infant was born and treated. I'm not aware of any link at all factually between any of the interstate cases and Cook County or Illinois as a whole for that matter. The only exception is the DEPA case. And in that case, the plaintiff, who is the mother of the infant, moved to Cook County after her infant tragically passed away. So that was a case where the infant received formula, developed neck, and unfortunately passed away all in Ohio. And then she moved to Cook County. We explain all of this at page 27 of our brief and cite a case that holds from this district, the Ellis case, that in a wrongful death suit, where the decedent's residence and state of the action are different from where the plaintiff chose, the plaintiff's choice of forum is entitled to even less effort. I also just wanted to point out that Meade-Johnson isn't in any one of the 23 cases that arose in other states. So for those cases, Meade-Johnson's C-suite in Cook County makes no difference whatsoever. And for Abbott, the plaintiffs haven't identified a single decision or action in Cook County. And finally, I just want to mention the idea of forum shopping, because we have been accused of forum shopping. These plaintiffs have filed hundreds of cases in Illinois because under the forum defendant rule, the cases can't be removed to federal courts for sensible pretrial administration in the MDL. In every single case that has been filed outside of Illinois, they have named a local hospital to frustrate removal. But they have not named local hospitals in any of the cases filed in Illinois. And as my co-counsel noted, there are hundreds of cases pending in southern Illinois that have no connection to Illinois either. We have sought repeatedly to avail ourselves of Rule 384 as a way to coordinate all of these cases for sensible pretrial administration. Plaintiffs opposed it, and the Supreme Court has denied those requests without prejudice, presumably until these issues of forum nonconvenience and venue are resolved. We would love to be able to coordinate and resolve these cases in a sensible way. What is happening in Cook County is in fact. What is happening in Cook County is an effort to try every single one of these cases using Cook County jurors who have no connection to the underlying facts. That is not sensible administration, and it is not consistent with the principles of forum nonconvenience. Mr. Pataki? Thank you. Thank you, Your Honor. I'll be brief in my responses to Mr. Keller's argument. He couldn't help himself. When he talked about his failure to warn claims, he said, failure to warn who? Moms in the NICU. Now, we have a dispute, including in that Watson case in Southern Illinois, about whether the warnings had to go to the doctor or the mother. But in these cases, that mother, that doctor are both in the NICUs in these outlying counties. None of those warnings would have been delivered to someone in Cook County. Mr. Keller said it himself. Failure to warn moms in the NICU. It's not the moms in the NICU in Cook County. Those NICUs are elsewhere. He says the recipient of the warning is not the main event. How is that possible to make a failure to warn claim? And whether you're saying the warning should have gone to the mother or the doctor, saying that where that warning was received and how it was evaluated and what was in it is not the main event. It has to be. The cases say that forum nonconvenience is where the case can best be tried. If the plaintiffs believe that pre-trial coordination somewhere was a good idea, they should have joined our rule 384 motions instead of objecting to both of them vociferously. And maybe since they were denied without prejudice, that will happen. But up until now, the plaintiffs have fought coordination in state court in every term. And the reason is they don't want that coordination unless they're in a place that they picked. And that's not how it works. I didn't mean to suggest Judge O'Brien was a rubber stamp. He's a former partner of mine, one of his. But he certainly seemed to push every chance he got to try to keep these cases in Cook County. I don't think he was favoring plaintiffs. What I really think, based on some of his comments, is that he believed Cook County was really capable of handling these cases. And it probably is, except that that's not what forum nonconvenience is based on. It's about connections between the forum and the case itself. Mr. Keller said that in trying to make Lee Johnson's C-suite relevant somehow, he said the buck stops. Mr. Bertucchi, you're just about out of time, so can you go ahead and wrap that up for us, please? Yes, I will. He said the buck stops with the CEO. That's cute. It's not about evidence. No CEO decided to put cow's milk in formula. The decisions that relate to the content of the warnings and the content of the formula were made in Indiana years ago and have been made there still. Thank you, Your Honor. Thank you. Thank you all for your excellence. We do appreciate excellence. This is a difficult case, and we will give it that kind of attention and respect. You all have done an excellent job, and we do appreciate that. Thank you and have a good day, all of you. Thank you, Your Honors.